IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

EMORY L. RICKERSON,

     Plaintiff,

v.

RODNEY SCOTT JETER,

     Defendant.

CIVIL ACTION FILE

NO. 3:19-cv-130-TCB

## O R D E R

This case comes before the Court on Defendant Rodney Scott
Jeter's motion [52] for summary judgment.

## I.   Background

Just before 5:00 p.m. on October 10, 2017, Rebecca Buchanan was
driving eastbound on Georgia Highway 109 in Pike County when she
swerved into the westbound lane, overcorrected, and hit a ditch, which
caused her vehicle to flip twice before coming to rest upright on the
shoulder of the eastbound lane.

Several drivers witnessed the accident and stopped to render aid, including Plaintiff Emory L. ("Rick") Rickerson, a former battalion chief with the Griffin County Fire Department,[1] who had been traveling in the westbound lane at the time of the crash.

Rickerson crossed the highway, parked his truck in the eastbound lane—approximately forty-five feet behind where Buchanan's vehicle came to rest—and turned on his hazard lights.

Rickerson approached Buchanan's vehicle and tried to open each door with no success. He saw Buchanan lying face-down across the front seat with her face buried in the passenger seat, and he reached through the front passenger window to check for her pulse. When he did not find one, he cleared her mouth of blood and repositioned her head to face the front of the vehicle.

Rickerson borrowed bystander Emily Meadows's phone to call 911. He informed the dispatcher of the location of the crash, that the vehicle

---

[1] Rickerson retired in 2012, and on the day in question he was not working in any capacity as a first responder.

had overturned and that its doors would not open, and that a single
female occupant was unresponsive and did not appear to be breathing.

Rickerson then had several bystanders push on the passenger-side
door to relieve the pressure on the locking mechanism so that the door
could be opened. Once the door was open, he quickly repositioned
Buchanan's head and shoulders to be in line with her body,
reestablishing her airway. He began working with Meadows and T.C.
Meuninck, another bystander, to keep Buchanan breathing until
paramedics arrived. The three rotated kneeling at her side in pairs, one
supporting her shoulders and the other her head. As they worked
together, Rickerson provided directions and continued to monitor
Buchanan's vitals.

Sergeant Jeter, a Georgia State Patrol officer (or "trooper"),
happened upon the crash while traveling westbound from the
Department of Public Safety's law enforcement training center where
he worked as the field training officer coordinator. He crossed over from
the westbound lane to the eastbound lane and parked on the eastbound
shoulder facing Buchanan's vehicle. He was driving his Georgia State

Patrol vehicle—an unmarked SUV with blue light bars on its front and rear. He activated the lights to alert oncoming drivers of the accident.

Jeter approached Buchanan's car and saw Meadows and Meuninck bent down near Buchanan's head. He heard Meadows consoling Buchanan and observed that Buchanan was unconscious and in critical condition.

Jeter was not wearing his typical uniform but was wearing a black polo shirt embroidered with the Georgia State Patrol badge. He was also wearing his sidearm and badge on his gun belt. Though Rickerson did not know that Jeter was a Georgia State trooper, he saw the blue lights and assumed that Jeter was some type of law enforcement officer.

Rickerson identified himself as a retired battalion chief with the local fire department and informed Jeter that he had found Buchanan slumped over in the passenger seat not breathing. Comfortable leaving Buchanan in Rickerson's care, Jeter returned to his vehicle to call 911. He informed the dispatcher that Buchanan was unresponsive, in critical condition, and experiencing agonal breathing, and he asked that a Life-

Flight helicopter be dispatched to the scene. The dispatcher relayed that emergency units were en route.

After hanging up, Jeter noticed Rickerson's truck parked in the eastbound lane. Concerned about the truck causing another collision or obstructing traffic or the inbound emergency vehicles, he moved his SUV and parked it directly behind the truck, leaving the blue lights on.

Jeter asked who owned the truck, and bystanders identified it as Rickerson's. He called over to Rickerson, who was standing approximately thirty feet away, and asked him to move his truck from the highway. Rickerson responded, "no sir, I'm not moving my vehicle right now and leaving this patient." [52-7] at 92:2–3. When Jeter made the request, Rickerson was standing behind Meuninck and Meadows. He was not physically touching Buchanan, and Jeter testifies that he did not observe or hear Rickerson give any instructions to Meadows or Meuninck at the time.

Jeter again told Rickerson to move his truck.[2] Rickerson refused and repeated the same response. Meadows offered to move Rickerson's truck for him, and Rickerson agreed. Rickerson took Meadows's place supporting Buchanan. At some point, he placed a second 911 call to inform the dispatcher that there was a landing area for the helicopter across the street.

Given Buchanan's critical condition and the ongoing emergency, Jeter decided not to arrest Rickerson immediately. When the Pike County medical responders and sheriff's deputies arrived on the scene, Jeter identified Rickerson as the likely best witness to the accident. Dash camera footage captured the audio of their conversation. Jeter explained to the deputies that he had already come close to arresting Rickerson, and he suggested that they obtain a witness statement from Rickerson before Jeter talked with him further. Meanwhile, Rickerson helped emergency responders move Buchanan to a backboard.

---

[2] The parties dispute whether Jeter told Rickerson why the truck needed to be moved. The Court does not find this disputed fact to be material.

Rickerson then approached Jeter, and the two talked for roughly one minute.[3] Jeter asked for Rickerson's driver's license, which Rickerson provided. One of the deputies took down Rickerson's information and interviewed him with Jeter present.

Rickerson first explained the crash to the deputy. He stated that he did not mind filling out a witness statement but that he had nothing more to say to Jeter. Jeter responded that all he asked was for Rickerson to move his vehicle, and Rickerson reiterated that he had not wanted to leave his patient and that he did not care about Jeter's background. He asked Jeter to either return his license or take him to jail.

After Rickerson finished speaking with the Pike County deputies, Jeter placed him under arrest for obstruction of a law enforcement officer. The charges were eventually dismissed.

On September 25, 2019, Rickerson brought this action pursuant to 28 U.S.C. § 1983, alleging false arrest and retaliatory arrest. Jeter now moves for summary judgment on the basis of qualified immunity.

---

[3] This portion of the conversation is not recorded.

7

## II.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce

"affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

## III. Discussion

Jeter argues that he is entitled to qualified immunity on Rickerson's § 1983 claims.

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, § 1983 provides a vehicle through

which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). However, "[q]ualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To succeed on a defense of qualified immunity, the defendant must first show that he was performing a discretionary function. *See Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014) (per curiam). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

A plaintiff can demonstrate that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and

10

(2) this right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The qualified immunity inquiry can begin with either prong. *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

In cases involving qualified immunity, courts "resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017) (quotation marks omitted). "[Rickerson] can avoid summary judgment by demonstrating either that [Jeter] is not entitled to . . . qualified immunity as a matter of law or by showing the presence of a genuine issue of material fact upon which one of those questions of law must turn." *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988) (citing FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 322–23)).

Rickerson does not dispute that Jeter was acting within his discretionary authority. The Court will address the remainder of the qualified immunity inquiry below.

## A.    False Arrest

### 1.    Was the Arrest a Constitutional Violation?

The existence of probable cause at the time of arrest constitutes an absolute bar to a § 1983 claim for false arrest. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020). Probable cause exists when an arrest is "objectively reasonable based on the totality of the circumstances." *Id.* (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Rankin*, 133 F.3d at 1435 (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).

An officer is not automatically held liable "for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Therefore, to receive qualified immunity protection, "an officer need not have actual probable cause but only 'arguable probable cause.'" *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)). Thus, the proper inquiry is "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.* (quoting *Montoute*, 114 F.3d at 184).

"Whether an arresting officer possesses probable cause or arguable probable cause 'to justify arrest for a particular crime depends, of course, on the elements of the crime.'" *Wilson v. Gaskins*, No. 7:18-CV-108(HL), 2019 WL 1290881, at *4 (M.D. Ga. Mar. 20, 2019) (quoting *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004)). Moreover, qualified immunity applies so long as an officer has arguable probable cause to arrest for *any* offense. *Merenda v. Tabor*, 506 F. App'x

862, 865 (11th Cir. 2013) (per curiam) (emphasis added) (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010)).

Jeter contends that arguable probable cause existed to arrest Rickerson for misdemeanor obstruction in violation of O.C.G.A. § 16-10-24(a) when Rickerson refused orders to move his truck from the highway. Under § 16-10-24(a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." "[T]he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." *Weidmann v. State*, 476 S.E.2d 18, 20 (Ga. Ct. App. 1996) (alteration in original) (quoting *Carter v. State*, 373 S.E.2d 277, 279 (Ga. Ct. App. 1988)).

"The essential elements of this misdemeanor offense are that the act constituting obstruction or hindering must be knowing and wilful [sic], and that the officer must be lawfully discharging his official duties at the time of such act." *Id.* (citing *Cline v. State*, 471 S.E.2d 24, 24–25 (Ga. Ct. App. 1996)). The official duties of a Georgia State trooper

14

include traffic enforcement, accident investigation, patrolling state public roads and highways, and safeguarding the lives and property of the public. *See* O.C.G.A. § 35-2-32(b). Thus, the question is whether Rickerson knowingly and willfully obstructed or hindered the execution of those duties.

Knowing and willful opposition to the officer constituting obstruction or hindrance is required for misdemeanor obstruction; "actual violence or threat thereof is not." *Weidmann*, 476 S.E.2d at 20. For example, "[a]rgument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element." *Pinchon v. State*, 516 S.E.2d 537, 538 (Ga. Ct. App. 1999) (citations omitted); *see also Duke v. State*, 423 S.E.2d 427, 428 (Ga. Ct. App. 1992) (clarifying that under the revised version of the misdemeanor obstruction statute, "verbal exchanges without threats of force and violence can authorize a conviction" (citations omitted)).

Under Georgia law, "[r]efusing to comply with an officer's command is sufficient to form the basis of an obstruction charge." *Townsend v. Coffee Cnty.*, 854 F. Supp. 2d 1345, 1358 (S.D. Ga. 2011)

(citations omitted) (applying Georgia law to find that the plaintiff's noncompliance with the officer's verbal commands furnished arguable probable cause for her arrest for misdemeanor obstruction, even though the refusal was due to confusion); *see, e.g.*, *Council v. State*, 662 S.E.2d 291, 293 (Ga. Ct. App. 2008) (finding that the refusal to comply with an officer's lawful demand to remain in a vehicle until the investigation was complete was sufficient to sustain a conviction for misdemeanor obstruction (citing *Arsenault v. State*, 571 S.E.2d 456, 458 (Ga. Ct. App. 2002))).

Here, the record evidence, viewed in the light most favorable to Rickerson, shows that he twice refused to move his truck when ordered to by Jeter, who Rickerson assumed was some type of law enforcement officer. Under those circumstances, Jeter had arguable probable cause to arrest Rickerson for misdemeanor obstruction. *See also Stryker v. State*, 677 S.E.2d 680, 682 (Ga. Ct. App. 2009) (finding that the officer had probable cause to arrest the plaintiff for obstruction when the plaintiff advised a companion to remove a car from the scene of an arrest after the arresting officer told him not to do so); *Harris v. State*,

622 S.E.2d 905, 907 (Ga. Ct. App. 2005) ("When Harris disobeyed Officer Wheeler's lawful commands to wait and back off, he committed the crime of misdemeanor obstruction.").

Nevertheless, Rickerson maintains that he was justified in refusing Jeter's orders because (1) they were unlawful, and (2) his actions provided an affirmative defense to criminal charges. Neither argument saves his claim.

First, Rickerson contends that Jeter's orders were not lawful because Georgia law imposes a criminal penalty for knowingly and willfully obstructing or hindering a certified emergency medical technician or professional in the lawful discharge of his official duties. O.C.G.A. § 16-10-24.2. Thus, he had no obligation to obey the commands.

Rickerson's argument that it was in fact Jeter who committed criminal obstruction lacks merit. The Court need not consider whether Rickerson qualified as a certified EMT or emergency medical professional under Georgia law at the time of the incident or whether he was discharging official duties as such because Rickerson has not

17

shown that Jeter knowingly and willfully hindered official medical duties.

When Jeter first approached the scene, he noticed only Meadows and Meuninck kneeling by Buchanan; meanwhile Rickerson introduced himself to Jeter as a retired battalion chief. It is undisputed that when Rickerson refused Jeter's orders to move the truck, he was standing behind Meadows and Meunick and not providing hands-on aid or support to Buchanan. And Jeter testifies that from his position roughly thirty feet away, he did not hear or observe Rickerson providing instruction or direction to Meadows and Meuninck when he gave the orders.[4]

Second, Rickerson argues that his noncompliance was justified because under Georgia law, rendering emergency care at the scene of an accident without charge is a defense to prosecution for any crime based on that conduct. *See* O.C.G.A. § 16-3-20(5) (citing § 51-1-29). This argument also fails.

---

[4] Rickerson, Meadows, and other bystanders recalled Rickerson giving directions at times while he was standing. But this is insufficient to create a dispute of fact as to whether Jeter heard Rickerson doing so at the time that he ordered him to move his truck.

"Arguable probable cause does not require an arresting officer to prove every element of a crime . . . before making an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citation omitted). Similarly, "[i]n making an assessment of probable cause, officers generally have no duty to resolve legal questions or to investigate possible defenses." *Elmore v. Fulton Cnty. Sch. Dist.*, 605 F. App'x 906, 913 (11th Cir. 2015) (per curiam) (citations omitted); *see also Williams v. Sirmons*, 307 F. App'x 354, 358 (11th Cir. 2009) (per curiam) ("Generally, in determining probable cause an arresting officer does not have to consider the validity of any possible defense." (citing *Baker*, 443 U.S. at 145–46)).

An exception exists "when the arresting officer *actually has knowledge* of facts and circumstances conclusively establishing an affirmative defense." *Williams*, 307 F. App'x at 358 (emphasis added). As already discussed, the undisputed facts do not show that Jeter had full knowledge of facts and circumstances conclusively establishing that

Rickerson was justified in his noncompliance because he was rendering emergency care.[5]

A reasonable officer in the same circumstances and possessing the same knowledge as Jeter could have believed, even if mistakenly, that Rickerson knowingly and willfully hindered Jeter's lawful efforts to make the scene of the accident safe and prepare for the inbound emergency vehicles. Jeter is therefore entitled to qualified immunity with respect to Rickerson's § 1983 false arrest claim.

### 2.   Was the Law Clearly Established?

Even if Jeter's actions violated a constitutional right, Rickerson has not shown that at the time, it was clearly established that Jeter's particular actions were in violation of the law.

The clearly established requirement may be met by showing one of the following: (1) a materially similar case had already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated

---

[5] Meadows's speculation that Jeter must have seen Rickerson rendering physical aid to Buchanan at some point prior to the ambulance's arrival does not create a dispute of fact as to whether Jeter knew that Rickerson was providing emergency care when he ordered Rickerson to move the truck.

the Constitution that no prior case law is necessary. *Loftus v. Clarke-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In arguing that it was clearly established that Jeter's actions violated Rickerson's constitutional rights, Rickerson cites the general principle that "an arrest made without arguable probable cause violates the Fourth Amendment[]." *Skop*, 485 F.3d at 1143. However, framing the clearly established inquiry so broadly runs afoul of the Supreme Court's directive "not to define clearly established law at a high level of generality." *Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

Importantly, the clearly established inquiry "does not ask whether there was probable cause in actuality." *Id.* "Instead, it asks whether the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable official would have understood that what he is doing violates' the Constitutional right at issue." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also Hope*, 536 U.S. at 739 ("For a constitutional right to be clearly

21

established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

Thus, the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Rickerson's arrest, "an objective officer could not have concluded reasonably that probable cause existed to arrest [him] under the particular circumstances [Jeter] confronted." *Gates*, 884 F.3d at 1303 (emphasis omitted) (citing *Mullenix*, 577 U.S. at 12).

Rickerson does not cite, and the Court has not found, case law clearly establishing that under these particular facts, every reasonable official would have understood that arresting Rickerson would violate his Fourth Amendment rights. Accordingly, summary judgment is appropriate on this additional basis.

### B.   Retaliatory Arrest

In considering whether Jeter is entitled to qualified immunity for Rickerson's retaliatory arrest claim, the Court will begin with the

clearly established prong of the inquiry. *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

At the time of Rickerson's arrest, the rule in the Eleventh Circuit was that the existence of arguable probable cause to arrest defeated a First Amendment claim for retaliatory arrest. *See, e.g.*, *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998)), *abrogated by Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018). Therefore, Jeter is also entitled to summary judgment on this claim.

## IV.  Conclusion

The Court commends Rickerson for his quick and heroic actions, which likely saved Buchanan's life. And the conflict at the scene between the parties is unfortunate. Nevertheless, Jeter is entitled to qualified immunity on Rickerson's claims. For the foregoing reasons, Jeter's motion [52] for summary judgment is hereby granted.

The Clerk is directed to close this case.

IT IS SO ORDERED this 1st day of July, 2021.

Timothy C. Batten, Sr.
Chief United States District Judge